United States District Court

Eastern District of New York

-----------------------------------X

Consolidated Edison Company of New York, Inc.,

Plaintiff,

- against -

New York Marine & General Insurance Company,

Defendant,

New York Marine & General Insurance Company,

Counter-Claimant,

- against -

Consolidated Edison Company of New York, Inc.,

Counter-Defendant.

-----------------------------------X

**Memorandum & Order**

21-cv-3852 (KAM) (LKE)

**Kiyo A. Matsumoto, United States District Judge:**

Plaintiff Consolidated Edison Company of New York, Inc. ("ConEd") alleges that defendant New York Marine & General Insurance Company ("New York Marine") breached its duties to defend and indemnify ConEd in a state court action captioned *Brenda Dow v. ConEd, et al.*, Index No. 10570/2014 (the "Underlying Action") as an additional insured under an insurance policy issued by New

York Marine to D'Onofrio General Contractors Corp. ("D'Onofrio").

New York Marine provided insurance coverage to D'Onofrio, which was retained by ConEd to remove snow and ice from ConEd's facilities during the winter of 2013.

Presently before the Court is ConEd's motion for summary judgment, seeking a declaratory judgment finding New York Marine in breach of its duties to defend and to indemnify ConEd in the underlying action, as well as a declaratory judgment that ConEd is entitled to be indemnified for the settlement amount and reimbursement for defense costs. (ECF No. 49.) Also before the Court is New York Marine's cross motion for summary judgment, seeking a declaratory judgment that New York Marine is not obligated to defend or indemnify ConEd, and dismissing ConEd's complaint. (ECF No. 51.)

For the reasons set forth below, ConEd's motion for summary judgment is **GRANTED** in part and **DENIED** in part. New York Marine's motion for summary judgment is **DENIED**.

## BACKGROUND

### I. Factual Background

Unless otherwise noted, the following facts are deemed undisputed based on the parties' submissions.

#### A. Contract between ConEd and D'Onofrio:

ConEd and D'Onofrio entered into a contract for snow removal services at ConEd's Ravenswood facility, 38-54 Vernon Boulevard, pursuant to a Blanket Purchase Agreement 136445 ("Agreement 136445") dated December 16, 2011, and incorporated by reference in a subsequent February 11, 2013 Purchase Order. (ECF Nos. 49-7; 51-11, 51-12.) Agreement 136445, which governed D'Onofrio's snow removal services at the Ravenswood station, stated that, as relevant, the "Scope of Work" was "snow and ice removal around station perimeters including sidewalks, driveways and roadways," as well as "the facility, stairs, walkways, roadways and tank farm area." (ECF Nos. 49-7 (Agreement 136445) at 1, 51-11 (Same) at 1.) "The services required shall include:" "spreading of [ConEd] supplied calcium chloride salt and/or sand when requested ([ConEd's] Option)" "spreading of [D'Onofrio] supplied calcium chloride salt and/or sand when requested ([ConEd's] Option)." (*Id.*) The Agreement continued that "[D'Onofrio] shall respond to a telephone call or faxed request for service, . . . mobilize and report to a designated site within 2 hours after an official call in has been received, . . . report directly to the [ConEd] representative in the substation and will be advised on how to proceed." (*Id.* at 2) Pursuant to this contract, D'Onofrio was to add ConEd as an additional insured under its general liability policy. (*Id.* at 20-22.)

**B. Insurance Policy of D'Onofrio through New York Marine**

At the time of Dow's February 9, 2013 fall, D'Onofrio had comprehensive general liability insurance coverage through New York Marine. (ECF Nos. 49-8 (Policy) at 3; 51-7 (Policy) at 6.) This policy includes "Endorsement 22" which modifies the insurance to additionally insure "[a]ny person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy." (ECF Nos. 49-8 (Policy) at 57; 51-7 (Policy) at 60.) This insurance includes liability for bodily injury caused, "in whole or in part by: 1. Your acts or omissions; or 2. The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured(s) . . ." (*Id.*) The additional insured policy does not apply to bodily injury occurring after "[a]ll work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed[.]" (*Id.*).

**C. Brenda Dow's Testimony**

During a May 2018 joint deposition, Brenda Dow testified that she slipped on a patch of ice on a roadway located at the Ravenswood facility where she worked. (ECF No. 49-14 (Joint Deposition Appendix Part 1 ("JDA1") at 57:13-58:2.) Dow arrived at work on

February 9, 2013 at 5 p.m., as part of her job, Dow walked over to the steam building at ConEd's Ravenswood facility every one to two hours to take steam readings. (JDA1 60:13-15; 92:13-16.) While Dow was making rounds, she noticed that snow and ice had accumulated on a dock connected to one of the buildings where she worked and had "piled up on the sides," although there had been "salting or sanding" of the dock, she did not see anyone "actually putting down salt or sand" while she was making her rounds. (JDA1 87:1-20.)

Around midnight on February 9, Dow exited the building on the dock and took stairs down onto a driveway to get to the steam building to take readings. (JDA1 97:23-98:22; 104:8-105:18.) Before getting to the driveway, Dow noticed snow piled up against the side of a building, but had no difficulty walking down the stairs because "there are gratings on the stairs." (JDA1 105:25-106:18.) Upon arriving to the driveway, Dow noticed "salt or sand" on the driveway, and walked 100 to 150 feet towards the steam building without incident. (JDA1 112:22-118:12.) She then had to turn and "make a little left" to walk toward the steam building door on a foot path made of cement. (JDA1 113:7-115:10.) Before she was able to reach the steam building door, however, she fell. (JDA1 122:16-123:10.) She testified that her "body was on the patch of the ice, the ice that [she] fell on" and that when she attempted to get up she was "sliding . . . because the ice was

still there." (JDA 133:8-9; 137:2-6.) Dow testified that she injured her right shoulder, right hand and wrist, and her right knee in the accident. (JDA 167:11-15.)

**D. Timesheet and D'Onofrio Employee Testimony**

A timesheet dated February 9, 2013 shows that four D'Onofrio employees worked from 12:30 to 9:30, and furnished 20 bags of salt. (ECF No. 49-13.)

Vincent Leone, the Assistant Vice President of D'Onofrio testified that he managed the ConEd account for the company (JDA1 376:9-19.) Leone negotiated and signed Agreement 136445, setting out the requirements for snow removal. He stated that D'Onofrio would get a phone call from ConEd, and ConEd would tell D'Onofrio "how many people and what type of equipment, how much salt. calcium chloride and we arrive onsite and perform the work according to Con Edison direction." (JDA1 378:10-381:16.) D'Onofrio was directed by Con Edison to start snow removal work on February 8, 2013 at 11:00 p.m. and conclude work the following morning, on February 9, 2013 at 11:00 a.m.. (JDA1 388:32-389:19.)

John Tarazhi, a Superintendent at D'Onofrio who did snow removal work at Ravenswood at the time of Dow's accident testified as follows. (ECF 49-15 ("Joint Deposition Appendix II" ('JDAII') 9:11-11:12)). D'Onofrio would remove snow "until Con Ed [said] stop or another crew would come in," and while D'Onofrio removed snow, ConEd would do their own snow removal as well. (JDAII 16:18-

17:12.) On February 9, 2013, D'Onofrio brought twenty bags of salt to the Ravenswood site. (JDAII 32:12-33:3.)

**E. Procedural Background**

**i. State Court**

In July 2014, Brenda Dow, initiated a personal injury lawsuit in the Supreme Court of the State of New York, Kings County, bearing Index No. 10570/2014 (the "underlying action"). (ECF No. 49-4 (Dow Summons and Compl.)

In the underlying action, Dow alleged that on February 9, 2013 she fell and that this fall was "caused by the joint, several and concurrent negligence of [ConEd] and/or [ConEd]'s agents, servants, employees and/or licensees in the ownership, operation, management, supervision, maintenance and control of the aforesaid premises." (ECF No. 49-4 ¶¶ 17-18.)

On September 8, 2016, ConEd filed a summons against D'Onofrio and tendered a claim for coverage to New York Marine. (ECF Nos. 49-5 (Third Party Complaint), 49-9 (September 8, 2016 Tender Letter.)) ConEd was thereafter a Defendant in the original action, and a Third-Party Plaintiff against the Third-Party Defendant D'Onofrio in the Third-Party cause of action. ConEd's Third Party Complaint against D'Onofrio alleged that "[o]n and before February 9, 2013, D'Onofrio General Contractors Corp. performed or was performing work or rendered or was rendering services at 3854 Vernon Blvd., Queens, New York as provided for in the

aforementioned contract and was in charge of said work or services and exercised exclusive supervision over said work or services performed by its agents, servants, or employees." (ECF No. 49-5 at 10.) The Third Party Complaint continued that "[o]n or about February 9, 2013, in the area of 3854 Vernon Blvd., Queens, New York, where the Contractor had agreed to provide and was providing or had provided services pursuant to the aforesaid contract, BRENDA DOW allegedly sustained personal injuries . . ." (*Id.* at 10-11.)

On October 7, 2016 New York Marine responded to ConEd's September 8 letter and acknowledged that ConEd had requested that New York Marine defend and indemnify them. (ECF No. 49-10.) In response to a demand made by D'Onofrio, Dow submitted a Bill of Particulars. (ECF Nos. 49-12; 51-11.) As relevant, she alleged that on February 9, 2013 at 11:55PM she slipped and fell on an exterior walkway at the Ravenswood Generating station due to the accumulation of "snow and/or ice." (*Id.* at 3.)

In the underlying action, D'Onofrio moved for summary judgment seeking dismissal of ConEd's Third-Party Complaint and cross-claims against it, arguing that it performed snow removal at Ravenswood at ConEd's direction, ConEd approved its work, and ConEd had control of the property for approximately 12 hours prior to Dow's fall. (ECF No. 51-6 at 2-3.) On August 4, 2020 the Supreme Court of the State of New York, Kings County, granted D'Onofrio's motions, reasoning that Dow and ConEd had not raised a triable

issue of fact and had not proffered any evidence that D'Onofrio's work was performed negligently, and that the contract between ConEd and D'Onofrio did not establish that D'Onofrio had a duty to defend and indemnify ConEd. (*Id.* at 4.) On November 17, 2020, New York Marine denied ConEd's demand for insurance coverage, citing the state court's order granting D'Onofrio's motion for dismissal. (ECF Nos. 49-11 (disclaimer letter); 51-8 (same))

ConEd appealed the supreme court's judgment and on April 3, 2024, the Appellate Division reversed the ruling granting summary judgment to D'Onofrio and dismissing the third-party cause of action for contractual indemnification. (ECF Nos. 49-6; 53-5). The Appellate Division determined that D'Onofrio had failed to establish that Dow's fall was not "resulting, in whole or in part, from, or connected with, the performance of the Purchase Order," such that the indemnification clause was not triggered. (*Id.*) The Appellate Division remanded the third-party action back to the lower court for trial, which has not yet been scheduled.

ConEd settled its case with Dow for $425,000, and then filed this Declaratory Judgment Complaint. (ECF Nos. 49-16 ¶ 14; 54-1 ¶ 14)

**ii. Federal Court**

ConEd sought a judgment of this Court declaring:

(1) ConEd is an additional insured under the policy of general liability insurance issued by New York Marine to D'Onofrio;

(2) ConEd is entitled to coverage in the underlying action pursuant to this policy;
(3) New York Marine was obligated to timely disclaim coverage to ConEd;
(4) New York Marine failed to timely disclaim coverage to ConEd;
(5) New York Marine was obligated to defend and indemnify ConEd in the underlying action;
(6) New York Marine is obligated to reimburse ConEd for the settlement amount and all defense costs and expenses incurred in the underlying action;
(7) ConEd shall have judgment for the costs and disbursements incurred in prosecuting the declaratory judgment action; and
(8) ConEd shall have such other and further relief as this Court deem just.

(ECF No. 1 (Compl.) at 5–6.)

On September 17, 2021, New York Marine filed its answer to the complaint and asserted a counterclaim: if it is determined that New York Marine has an indemnity obligation to ConEd, then that obligation is in excess to all insurers available to ConEd. However, if it is determined that NY Marine has a defense and indemnity obligation to ConEd, then ConEd is not entitled to reimbursement from NY Marine for ConEd's proportionate share of liability. (ECF No. 11 ¶ 31.).

Both ConEd and New York Marine asked this court for permission to file motions for summary judgment. (ECF Nos. 19, 22.) In September 2022, at the parties' request, the court stayed the case pending the outcome of the appeal before the Second Department. (ECF entry at 9/8/2022.) In April 2024, the parties informed this

court that the Second Department had reversed the lower court's granting of summary judgment to D'Onofrio. (ECF No. 31.) Settlement and mediation discussions were held and failed to resolve the matter; the parties informed the court that they wished to renew their requests to file motions for summary judgment, which the court granted. (ECF No. 39; entry at 8/7/2025.)

On November 6, 2025, both ConEd and New York Marine filed their motions for summary judgment, ECF. Nos. 49, 51, oppositions, ECF Nos. 53, 54, and reply memoranda of law, ECF Nos. 55, 56.

**iii. ConEd's Motion for Summary Judgment:**

ConEd moves for an order granting summary judgment in its favor and entering an order declaring:

(1) ConEd is an additional insured under the policy of general liability issued by New York Marine to D'Onofrio;
(2) New York Marine's refusal to afford coverage and defend the underlying lawsuit has no merit and is invalid;
(3) New York Marine was obligated to defend ConEd in the underlying action;
(4) New York Marine is obligated to indemnify ConEd for the settlement amount of the underlying action;
(5) New York Marine is obligated to reimburse ConEd for defense costs and expenses incurred in the defense of the underlying action; and
(6) All further relief this Court deems just and proper.

(ECF No. 49 (Mot.) at 1-2.)

ConEd argues that New York Marine must defend it as a matter of law because New York Maine had actual knowledge of facts which

established a reasonable probability of coverage. (ECF No. 49-17 (ConEd's Memo. Of Law.) at 14-17). ConEd asserts that "[a] lesser amount of salt had been used than had been called for[,]" and that this fact establishes a "reasonable possibility" of liability on the part of D'Onofrio, which in turn triggers New York Marine's obligation to defend ConEd (*Id.* at 16.)

In addition to being entitled to a defense, ConEd argues that the policy issued to D'Onofrio also requires that ConEd be indemnified. (*Id.* at 18-20.) In reversing the grant of summary judgment to D'Onofrio, the Second Department stated that Dow's accident was not "'resulting, in whole or in part, from, or connected with, the performance of the Purchase Order' such that the indemnification clause in the parties' service contract was not triggered." (*Id.* at 18.) According to ConEd, the term "in whole or in part" refers to the negligence of the entity, and that, because of the reversal by the Second Department, whether D'Onofrio had caused the accident by negligence is undecided and properly before this Court. (*Id.*) ConEd argues that, per its contract with D'Onofrio, 75 bags of salt were to be used, but, per testimony by a D'Onofrio employee, only 20 had actually been used. Accordingly, this act and/or omission by D'Onofrio compels a finding of some negligence by D'Onofrio, and per ConEd, they are entitled to indemnification. (*Id.* at 18-19.) ConEd's acceptance of the work performed does not immunize D'Onofrio from liability

because the lack of adequate salt contributed to the ice-build up, which was a cause of Dow's accident. (*Id.* at 19.) Therefore, ConEd asserts that it is entitled to indemnification in the underlying action. (*Id.* at 20.)

In opposition to ConEd's motion for summary judgment, New York Marine generally argues that the insurance policy requires that D'Onofrio indemnify ConEd to the extent that an injury was caused by D'Onofrio's own negligence, and that "Dow's accident happened approximately 12 - 14 hours after D'Onofrio was discharged by Con Edison, after Con Edison approved its work, and while Con Edison was in full and exclusive control of the subject premises where Dow's accident occurred." (ECF No. 54-2 at 4–25.)

**iv. New York Marine's Motion for Summary Judgment:**

New York Marine filed a counter-motion for summary judgment, seeking an order:

(1) Declaring that New York Marine is not obligated to defend or indemnify ConEd in the underlying action;
(2) Dismissing ConEd's Complaint in this declaratory judgment action in its entirety; and
(3) All further relief this Court deems just and proper.

(ECF No. 51 (Mot.) at 1–2.)

First, New York Marine argues that ConEd's contract with D'Onofrio did not give rise to liability in favor of Dow, a third party. (ECF No. 51-3 (New York Marine Memo. Of Law.) at 8–22.) Broadly, New York Marine asserts that D'Onofrio's alleged acts or

omissions were not a proximate cause of Dow's injury and, therefore, neither D'Onofrio nor New York Marine are obliged to indemnify ConEd. (*Id.* at 11.) New York Marine points to the contract between D'Onofrio and ConEd, which "makes abundantly clear that Con Edison controlled and directed D'Onofrio's work, specified what was needed for a job, how D'Onofrio was to proceed with the work, and that Con Edison inspected the work before D'Onofrio was permitted to leave." (*Id.* at 14.) Given the evidence that Dow's accident occurred after D'Onofrio was discharged by ConEd, according to New York Marine, "any further issues regarding snow and ice on the premises were the responsibility of Con Edison, not D'Onofrio." (*Id.*) With respect to the issue of the salt used, "[w]hether or not D'Onofrio used 20 or 25 bags of salt at Ravenswood, there is no evidence that 20 versus 25 bags of salt caused Dow's accident, does not establish whether adequate amount of salt was used . . ." *Id.* at 17.[1]

Second, New York Marine argues that ConEd is not entitled to a defense because New York Marine has no duty to indemnify ConEd. *Id.* at 23-25.

In opposition, ConEd reiterates its arguments that as an

[1] New York Marine also asserts that finding it obligated to indemnify ConEd even if D'Onofrio were only minimally negligent would violate New York General Obligations Law §5-322.1 which voids indemnification provisions in construction contracts that indemnify a party for their own negligence. *See* NY GEN OBLIG §5-322.1. (ECF No. 51-3 at 21-23.) Construction contracts are not at issue in this case.

additional insured it is entitled to defense and indemnification under the insurance policy New York Marine issued to D'Onofrio. (ECF No. 53-14.)

**JURISDICTION**

**I. Subject Matter Jurisdiction**

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because ConEd is a citizen of New York, New York Marine is a citizen of New Jersey and Delaware,[2] and the amount in controversy exceeds $75,000.[3] *See Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 68 (2d Cir. 2012) (noting general principle, that "in determining jurisdiction, we realign the declaratory judgment claims and parties as they would appear in a coercive suit," which applies "to the diversity jurisdiction context" (citations omitted)).

**II. Declaratory Judgment Act and Discretionary Jurisdiction**

"[D]istrict courts retain 'broad discretion' to decline jurisdiction under the DJA [Declaratory Judgment Act]." *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99 (2d Cir. 2023)(quoting *Niagara Mohawk Power Corp. v. Hudson River-Black*

[2] *See* ECF No. 1 (Complaint) ¶ 3 (alleging citizenship); *see* ECF entry at 8/17/2021 (finding that ConEd had provided documentary evidence establishing that New York Marine is a citizen of Delaware with its principal place of business in New Jersey.); *see also* ECF No. 10-1 (documentary evidence).

[3] *See* ECF No. 1 (Complaint) ¶ 6 (alleging that ConEd seeks coverage for claims against it in the underlying action which was settled for $425,000.).

*River Regul. Dist.*, 673 F.3d 84, 106 n.7 (2d Cir. 2012)). The Second Circuit has instructed that the following factors are among those that should inform a district court's exercise of discretionary jurisdiction:

> (1) "whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved"; (2) "whether such a judgment would finalize the controversy and offer relief from uncertainty"; (3) "whether the proposed remedy is being used merely for procedural fencing or a race to res judicata"; (4) "whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court"; (5) "whether there is a better or more effective remedy"; and (6) whether concerns for "judicial efficiency" and "judicial economy" favor declining to exercise jurisdiction.

*Id.* at 99–100 (alterations adopted; citations omitted) (quoting *Niagara Mohawk Power*, 673 F.3d at 105). These factors are "non-exhaustive," and no single factor is dispositive in the exercise of discretionary jurisdiction. *Id.* at 100. The court's broad discretion includes a "wide latitude to address ... factors as relevant to the ultimate question of whether 'the normal principle that federal courts should adjudicate claims [over which they have] jurisdiction' should 'yield[ ] to considerations of practicality and wise judicial administration' in a particular case[.]" *Admiral Ins. Co.*, 57 F.4th at 100 (quoting *Wilton* v. *Seven Falls Co.*, 515 U.S. 277, 288 (1995)).

## LEGAL STANDARD

Summary judgment shall be granted to a movant who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 243. "If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted). When, as here, both sides move for summary judgment, a court is "required to assess each motion on its own merits and to view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir.2011).

## ANALYSIS

The parties disagree whether New York Marine had a duty to defend and indemnify ConEd in the underlying state court action.

### I. The Duty to Defend

The court finds that New York Marine had a duty to defend

ConEd as an additional insured. "In New York, an insurer's duty to defend is 'exceedingly broad' and distinct from the duty to indemnify." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) (quoting *Auto. Ins. Co. of Hartford v. Cook*, 850 N.E.2d 131, 137 (2006)). "An insurer may refuse to defend 'only if it could be concluded as a matter of law that there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy.'" *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 82 (2d Cir. 2013) (alterations in original) (quoting *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 477 N.E.2d 441, 444 (1985)). An insurer must defend an insured if a "reasonable possibility" of recovery under the policy exists pursuant to either (a) the allegations in the underlying action or (b) the insurer's actual knowledge of the facts. *Fitzpatrick v. Am. Honda Motor Co.*, 575 N.E.2d 90, 91-93(1991). "This standard applies equally to additional insureds and named insureds." *Regal Const. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 930 N.E.2d 259, 261-62 (2010).

As to the underlying action, Dow alleged that she fell and that this fall was "caused by the joint, several and concurrent negligence of [ConEd] and/or [ConEd]'s agents, servants, employees and/or licensees in the ownership, operation, management,

supervision, maintenance and control of the aforesaid premises." (ECF No. 49-4 ¶¶ 17–18.)

The insurance policy issued to D'Onofrio includes liability for bodily injury caused, "in whole or in part by: 1. Your acts or omissions; or 2. The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured(s) . . ." (ECF Nos. 49-8 (Policy) at 57; 51-7 (Policy) at 60.) New York Marine does not argue that ConEd is not listed as an additional insured under the policy. (*See* ECF No. 51-3 at 12.) And under the additional insured endorsement, New York Marine agreed to cover claims against D'Onofrio for "[a]ny person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy." (ECF Nos. 49-8 (Policy) at 57; 51-7 (Policy) at 60.) It is undisputed that D'Onofrio and ConEd agreed in writing that ConEd was to be added as an additional insured under its general liability policy. (ECF Nos. 51-2 ¶14; 53-3 ¶14.)

New York Marine argues that "[b]ecause D'Onofrio is not an insurer, its duty to defend a contractual indemnitee is not broader than its duty to indemnify . . ." (ECF No. 51-17 at 12.) The issue, however, is not whether D'Onofrio has a duty to defend, but whether New York Marine was obligated to defend ConEd.

New York Marine also argues that ConEd was not entitled to a defense because there is no factual or legal basis on which New York Marine might be obligated to provide indemnification. (ECF Nos. 51-3 at 23; 54-2 at 25.) New York Marine's duty to defend is triggered by the initiation of a claim under which New York Marine may eventually be found liable, as "an insurer may be required to defend under the contract even though it may not be required to pay once the litigation has run its course." *Auto. Ins. Co. of Hartford* v. *Cook*, , 850 N.E.2d 1152, 1155 (2006). This principle does not change just because the parties to whom an insurer owes a duty to defend are additional insureds rather than named insureds, as "additional insured coverage is not contingent upon a liability finding [and] the obligation of an insurer to provide a defense to an additional named insured under the policy exists to the same extent as it does to a named insured." *BP Air Conditioning Corp. v. One Beacon Ins. Group*, 871 N.E.2d 1128,1129 (2007).

ConEd, in its Third-Party Complaint, alleged, among other things, that D'Onofrio had performed work in the area where Dow had fallen. (ECF No. 49-5 at 10.). Dow's Bill of Particulars stated that she slipped and fell on February 9, 2013 due to a "dangerous accumulation of snow and/or ice." (ECF No. 4"9-12 at 3.) And the Joint Deposition Testimony submitted by the parties makes clear that D'Onofrio removed snow and ice from the site of

Dow's injury on the day of her injury. Given the facts alleged in the underlying complaint, viewed alongside the relevant extrinsic evidence, there is a reasonable possibility that Dow's injury was proximately caused by the acts and omissions of D'Onofrio in the performance of its contracted snow and ice removal. *See Certain Underwriters at Lloyd's, London v. Travelers Cas. Ins. Co. of Am.*, 664 F. Supp. 3d 288, 295 (E.D.N.Y. 2023) (considering non-conclusory allegations of the third-party complaint and facts taken from depositions to determine an insurer's duty to defend).

Overall, the alleged and established facts in the underlying action form a "factual [and] legal basis on which [New York Marine] might eventually be held to be obligated to indemnify [ConEd] under any provision of the insurance policy." *Servidone Constr. Corp.* 477 N.E.2d at 444. New York Marine has failed to "eliminate the possibility" that there may be coverage in the underlying action, *Stein v. N. Assur. Co. of Am.*, 617 F. App'x 28, 31–32 (2d Cir. 2015), and as such the Court finds that it had a duty to defend ConEd.

Therefore, ConEd's motion for summary judgment with respect to its arguments that ConEd is an additional insured and that New York Marine was obligated to defend them in the underlying action is GRANTED, and New York Marine's motion for summary judgment that they were not obligated to defend ConEd is DENIED.

**II. Reimbursement for Defense Costs and Expenses in the**

**Underlying Action**

ConEd seeks a declaration that they are entitled to a reimbursement of the costs incurred in defending the underlying action. (ECF No. 1 ¶ 30.) Because this Court has found that New York Marine does have a duty to defend ConEd, the Court awards summary judgment to ConEd on the cause of action seeking a declaration that New York Marine is to reimburse ConEd for the defense costs, including attorneys' fees incurred in defense of the underlying action. *See Columbus McKinnon Corp. v. Travelers Indem. Co.*, 367 F. Supp. 3d 123, 155 (S.D.N.Y. 2018) ("Where . . . an insured is forced to defend an action because the insurer wrongfully refused to provide a defense, the insured is entitled to recover its reasonable defense costs, including attorneys' fees.")(citation omitted).

**III. The Duty to Indemnify**

The duties to defend and indemnify are separate and a breach of the duty to defend "does not entail an obligation to pay the settlement amount in the absence of a duty to indemnify." *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 83 (2d Cir. 2013). Unlike the duty to defend, which is "measured against the allegations of pleadings," the duty to indemnify is "determined by the actual basis for the insured's liability to a third person." *Servidone*, 477 N.E.2d at 444 (citations omitted);

*accord Allianz Ins. Co. v. Lerner,* 416 F.3d 109, 115 (2d Cir. 2005).

The underlying action has been settled without a determination of causation, and "even in cases of negotiated settlements, there can be no duty to indemnify unless there is first a covered loss." *Servidone*, 477 N.E.2d at 444. The indemnification question turns on whether Dow's claims fall within the additional insured provisions in the New York Marine's policy with D'Onofrio. In other words, the issue is whether the ConEd's liability arises from injuries "caused, in whole or in part by: 1.[D'Onofrio's] acts or omissions . . . in the performance of [D'Onofrio's] ongoing operations for [ConEd] . . . ." (ECF Nos. 49-8 at 57; 51-7 at 60.)

"It is settled that '[e]ven in diversity actions, ... federal law controls the justiciability of declaratory judgment actions.'" *Stoncor Grp., Inc.* v. *Peerless Ins. Co.*, 322 F. Supp. 3d 505, 512 (S.D.N.Y. 2018). Declaratory judgment actions regarding the duty to indemnify may be ripe even if liability has not been finally established in the underlying action. *See id.* at 511-12 (collecting cases). That is because parties' adverse interests regarding indemnity may be "of sufficient immediacy and reality" to establish a live controversy even before it is certain that an insurer will be called upon to indemnify. *See Admiral Ins. Co.*, 57 F.4th at 92-93; *see also Catlin Ins. Co. v. Champ Constr. Co.*, No.

24-CV-4499 (LJL), 2025 WL 2494291, at *7 (S.D.N.Y. Aug. 29, 2025) (the fact that a court "may have to address a merits question" also raised in the underlying case "does not make the lawsuit unripe.").

In remanding and reinstating ConEd's Third-Party Cause of action against D'Onofrio, the Appellate Division stated that D'Onofrio had failed to establish that Dow's accident was not "'resulting, in whole or in part, from, or connected with, the performance of the Purchase Order' such that the indemnification clause in the parties' service contact was not triggered" and that, therefore, D'Onofrio was not entitled to summary judgment. (ECF No. 49-6.) The Court finds that, given this statement by the Appellate Division denying summary judgment to D'Onofrio, there is a practical possibility that a liability finding against D'Onofrio will be entered in the Underlying Action, and as such ConEd's claim seeking declaratory judgment on the indemnification issue is arguably ripe.

In this case, however, the Court shares the concern other courts have raised "about becoming entrenched in a factual quagmire that has yet to be resolved in the underlying litigation." *Atl. Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243 (S.D.N.Y. 2013), aff'd sub nom. *Atl. Cas. Ins. Co. v. Greenwich Ins. Co.*, 548 F. App'x 716 (2d Cir. 2013). The Court therefore declines to exercises its discretion under the DJA on this portion

of the ConEd's claims. *See e.g.*, *Lafarge Can. Inc. v. Am. Home Assurance Co.*, 2018 WL 1634135, at *7 (S.D.N.Y. Mar. 31, 2018) (noting that "two records are being developed for different purposes at present—insurance coverage here, and liability in [the underlying action]," discouraging the court from creating "overlapping, and possibly inconsistent, factual records" that could "create friction with the [underlying] court[ ]").

Therefore, the Court dismisses ConEd's complaint (and New York Marine's counterclaim) for declaratory relief as to the duty to indemnify without prejudice as to its renewal if liability has been established in the Underlying Action. *See Travelers Prop. Cas. Co. of Am. v. Harleysville Worcester Ins. Co.*, 685 F. Supp. 3d 187, 216 (S.D.N.Y. 2023) ("This Court can, consistent with the Constitution, decide the indemnity issue, but doing so would raise a host of practical and comity concerns. Therefore, the Court DENIES Defendant's motion as to the duty to indemnify without prejudice as to its renewal after liability has been established in the Underlying Action or after other developments occur that would alleviate the Court's expressed concerns."); *see also Lafarge Canada Inc.*, 2018 WL 1634135, at *5 ("[C]ourts regularly require the existence of liability before exercising DJA discretion over indemnity issues.") (collecting cases).

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** ConEd's motion in part for summary judgment declaring that (1) ConEd is an additional insured under the policy of general liability issued by New York Marine to D'Onofrio; (2) New York Marine was obligated to defend ConEd in the underlying action; and (3) New York Marine is obligated to reimburse ConEd for defense costs and attorneys' fees incurred in the defense of the underlying action.

The Court declines to exercise discretionary jurisdiction over ConEd's declaratory judgment claim that New York Marine has a duty to indemnify ConEd for the settlement amount and therefore **DISMISSES** Counts 6 and 7 of ConEd's Complaint without prejudice.

The Court **DENIES** New York Marine's motion for summary judgment and **DISMISSES** New York Marine's counterclaim without prejudice.

The Clerk of Court is respectfully requested to close this case.

**So ordered.**

Dated: September 28, 2026
Brooklyn, New York

**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York